## COURT OF APPEALS, JUNE TERM, 1821.

### WININGDER vs. DIFFENDERFFER's Lessee.

JUNE 1821.

APPEAL from *Baltimore* county court. Ejectment for a lot of ground in the city of *Baltimore*, being part of lot No. 50. The defendant in the court below, pleaded the general issue. A verdict was taken for the plaintiff, subject to the opinion of the court, on the following statement of facts, viz. It is admitted that *Christopher Guiesler*, being possessed and entitled to the premises in the declaration mentioned, for a term of 99 years, did, on the 17th of November 1782, duly make his will, and died on the 1st of January 1783, and that said will was duly proved; by this will he devised to his wife *Catharine* the use of the whole of his estate, both real and personal, during her natural life; but in case she should marry during her widowhood, then she was only to be entitled to one third of it; after her death, he gave to his son *Peter* the whole of his estate as aforesaid, unless he married, if he did, he was only to be entitled to two thirds thereof. He appointed his wife *Catharine* his executrix. *Christopher Guiesler*, at his death, left his said widow *Catharine*, and his son *Peter*, his sole devisees and representatives; *Catharine* took upon herself the execution of the will; and assented to the bequests and devises made by it, and in pursuance thereof took possession, (among other parts of the property of the testator,) of the premises mentioned in the declaration, and continued to reside on and possess the same from the death of the testator until her own death, which happened about the 26th of March 1816, and never married after the testator's death. The following proceedings and discharge were had by and before *John Dougherty*, *John Bankson*, and *Thomas W. Griffith*, esquires, the persons before whom they purport to have taken place, viz. "State of *Maryland*, *Baltimore* county, to wit. Whereas a certain *Peter Giesler*, of *Baltimore* county, after having actually remained in the prison of *Baltimore* county aforesaid, twenty days and upwards, in and by virtue of a writ at the suit of *George Hass*, for £37 10 0 debt, and 34 shillings and 10 pence costs, also the amount of officers fees, did, by his petition in writing signed by the said *Peter Giesler*, and addressed to *John Dougherty*, *John Bankson* and *Thomas W. Griffith*, esquires, justices

act notice given by him of the time of the sale of the property contained in the deed.

Whether proceedings under the insolvent laws are liable to all the objections incident to those of other special and limited authorities? *Quere.*

---

Winingder vs Diffenderffer. The certificate of justices of the peace of their proceedings under the act of 1774, ch. 28, relating to insolvent debtors, is of *itself*, evidence of the facts it contains, and a party claiming under such proceedings is not compelled to prove such facts by evidence *aliunde* the certificate. Where it appears by the proceedings of the justices under the act, that the insolvent, at the time of applying for its benefit, had been in confinement for *twenty days and upwards*, and that afterwards, at the meeting of the Justices, the insolvent had been in prison *fifty-two days*, the legal inference is, that he had not been confined for a longer period, altho' no negative words are used shewing that not to have been the case. It is not necessary that it should appear *negatively*, in proceedings under the act in question, that the debt of the insolvent, at the time of his application, do not exceed 2*l.* sterling, it is sufficient if it appears *affirmatively*. The omission of the word "*or*" which immediately precedes the words "to secure the same to receive or expect any profit or advantage," &c. in the oath required by the act of 1774, does not materially change the meaning of such oath. In a sheriff's deed, as trustee, of an insolvent debtor under said act, it is not necessary to state the ex-

JUNE 1821.

Winingder
vs
Diffenderffer

of the peace for said county, pray the benefit of the act of assembly of this state, entitled, 'An act for the benefit of insolvent debtors,' passed at March session 1774. And whereas we the said justices, did, on the 1st of August 1808, appoint a meeting to be held at the court-house for *Baltimore* county aforesaid, for the discharge of the said *Peter Giesler*, to wit, on the 1st of September next, in the year aforesaid, and issue a certificate of the said appointment in the words following, to wit: 'Whereas *Peter Giesler* hath petitioned us the subscribers, justices of the peace for the county aforesaid, and sets forth that he hath been confined in the gaol of *Baltimore* county aforesaid, twenty days and upwards, for debts he is unable to pay, and for want of bail; these are therefore to command you to produce the body of *Peter Giesler* on the first day of September next, at the court-house of the said county, at 4 o'clock, P. M. and see that due notice, according to law, be given to his creditors to appear and show cause, if any, why he should not be liberated according to law, and the act of assembly made for the benefit of insolvent debtors, passed at March session 1774, and this shall be your sufficient authority. Given under our hands and seals this 1st of August 1808.'' Signed and sealed by the said three justices, and directed ''To the Sheriff of *Baltimore* county.'' ''And whereas on the 1st of September in the year aforesaid, we, the said justices and the said sheriff, in pursuance of the said appointment, did meet at the court-house aforesaid, and the sheriff aforesaid having produced the body of *Peter Giesler*, the prisoner, personally before us the subscribers, two of the justices aforesaid, and having proved to us that he did set up copies of the said notice and appointment of our said meeting, one at the door of the county clerk's office, and one other copy at the prison door of said county, on the 10th of August last, 1808, being twenty days and upwards previous to his discharge; and having also made known to us, the justices aforesaid, the cause of the imprisonment of the said *Peter Giesler*, who hath actually been imprisoned for the space of fifty-two days; and it appearing to us, the said justices, from the cause of the imprisonment of the said *Peter Giesler*, that the whole debts due and owing by the said *Peter Giesler*, do not amount together to the sum of £200 sterling money, or the value thereof in current money of this state.

And the said *Peter Giesler* having delivered to the sheriff

a schedule of his whole estate, both real and personal, debts and credits, and also delivered a duplicate thereof to us, the said justices, to wit;—'A schedule of the goods and chattels, debts and credits, of *Peter Giesler*, an insolvent debtor." Then follows a list of debts due by *Peter Giesler*, amounting to $508 81, and his wearing apparel to amount of $10. Signed by him, and witnessed by the two justices, *Bankson* and *Griffith*. "Which said schedule and duplicate have been subscribed by the said *Peter Giesler*, in presence of the said justices, who have subscribed our names as witnesses. And we, the said justices, at the request of the said *Peter Giesler*, administered to him the following oath, prescribed by the said act of assembly, to wit: 'I *Peter Giesler*, do solemnly swear, that the schedule which I have delivered to the sheriff of *Baltimore* county, doth contain a full and true account, to the best of my knowledge and remembrance, of my whole estate, both real and personal, or that I have any title to, or interest in, and of all debts, credits, and effects whatsoever, which I, or any in trust for me, have, or at the time of my petition had, or am, or was in any respect entitled to in possession, remainder or reversion; and that I have not, directly or indirectly, at any time since my imprisonment, or before, sold, *lessened (a)*, or otherwise conveyed, disposed of, or entrusted, all or any part of my estate, goods, stock, money, or debts, thereby to defraud my creditors *(b)*, to secure the same to receive or expect any profit or advantage thereof. So help me God.' Which said duplicate hath been by us transmitted to the clerk of the county aforesaid; and we the justices aforesaid, after delivering the schedule and duplicate aforesaid, and administering the oath aforesaid, transferring the duplicate aforesaid, did, by our order in writing, command the sheriff forthwith to set at liberty the said *Peter Giesler*, which order shall be sufficient to discharge and indemnify the said sheriff against any escape or action whatsoever. Witness our hands and seals this 1st day of September 1808." Signed and sealed by said *Bankson* and *Griffith*. *Dougherty, Bankson* and *Griffith*, were, at the time said proceedings took place, and when the said discharge was granted, justices of the peace for

*(a)* This word should have been *leased*.

*(b)* The word *or* omitted here.

*Baltimore* county, duly qualified. *Peter Giesler* in said proceedings mentioned, is the *Peter Guiesler* the aforesaid devisee and son of *Christopher Guiesler.* A duplicate of said discharge and proceedings was duly and regularly transmitted to the clerk of *Baltimore* county court, and has there remained ever since. At the time of the release and discharge of said *Peter, John Hutchins* was the sheriff of *Baltimore* county, but died some short time afterwards, without having in any manner executed the duties imposed on him by said proceedings and discharge, as trustee of said *Peter.* At the death of *Hutchins, William Merryman* was duly elected, and qualified, sheriff of *Baltimore* county; and after having been so qualified, and whilst he was sheriff of said county, did, on the 28th of August 1810, duly execute a deed to *John Diffenderffer,* the lessor of the plaintiff, for the premises mentioned in the declaration in this cause. This deed (which was duly acknowledged and recorded,) recited, that in pursuance of authority vested in *Merryman,* he set up and exposed to public sale, after giving due notice, on the 25th of August then instant, all the estate, &c. of *Peter Guiesler,* of, in and to, a lot of ground No. 50, &c. and that at said sale *Diffenderffer* became the highest bidder and purchaser, for $580, &c. Upon this statement the county court gave judgment for the plaintiff; and the defendant appealed to this court; when the cause was argued at this term before CHASE, Ch. J. BUCHANAN, EARLE, JOHNSON, and MARTIN, J.

*Pinkney,* and *Williams,* (assistant attorney-general,) for the appellant, relied on the act of 1774, *ch.* 28, *s.* 1. *Johnson's lessee vs. Kraner,* 2 *Harr. & M'Hen.* 243. *Weems vs. Disney,* 4 *Harr. & M'Hen.* 156. *Gittings' lessee vs. Hall,* 1 *Harr. & Johns.* 23. *Lowes vs. Holbrook,* Ibid 154. *Gibson's lessee vs. Smith,* Ibid 253. *Parker vs. Rule's lessee,* 9 *Cranch,* 64, 70. *Williams et al. vs. Peyton's lessee,* 4 *Wheaton,* 77. *Houghton vs. Strong,* 1 *Caine's Rep.* 486, (and note.) *Delamater vs. Borland,* Ibid 594, (note.) *King vs. Fuller,* 3 *Caine's Rep.* 153. *Powers vs. The People,* 4 *Johns. Rep.* 292. *Rex vs. Mayer, &c. of Liverpool,* 4 *Burr.* 2244. *Trever vs. Wall,* 1 *T. R.* 154. *Peacock vs. Bell,* 1 *Saund.* 74, (note.) *Ladbroke vs. James, Willes' Rep.* 201.

*Winder* and *R. Johnson,* for the appellee, also relied upon the act of 1774, *ch.* 28, and *Johnson vs. Kraner.* Por-

*ter's* case, 1 *Coke*, 22, *a. Rowland vs. Veale*, 1 *Cowp.* 19. JUNE 1821.
*Rex vs. Gayer*, 1 *Burr.* 245. *Martin vs. Hunter's lessee*,
1 *Wheaton*, 361. *Burr's Trial*, 25...*The State vs. Levy*, 3
*Harr. & McHen.* 591. *The Bank of Columbia vs. Ross*, 4
*Harr. & McHen.* 456. *Chapline vs. Shoot*, 3 *Harr. & McHen.*
350; and the acts of 1798, *ch.* 101, *sub. ch.* 8; and *Nov.*
1779, *ch.* 25, *s.* 18.

Winingder
vs
Diffenderffer

JOHNSON, J. delivered the opinion of the court. An action of ejectment was brought in *Baltimore* county court, to recover the land in question, by *John Diffenderffer's* lessee, and a judgment was given for the plaintiff on a case stated, and from that judgment the defendant has appealed to this court.

By the case stated it appears, that *Christopher Guiesler*, or *Kiesler*, was possessed and entitled to the premises in the declaration mentioned for the term of ninety-nine years, and on the 17th of November 1782, duly made and executed his last will and testament, by which he bequeathed to his son *Philip Kiesler*; and by his will his wife is appointed his executrix, who, after his death, in due form of law obtained letters testamentary thereon.

It also appears that the executrix assented to the bequests of the will, and in pursuance thereof took possession, (amongst other parts of the testator's property,) of the premises mentioned in the declaration, and that she died before the institution of this suit.

*Peter Kiesler*, on the death of his mother, *took, or attempted* to take, the benefit of the act, entitled, "An act for the relief of insolvent debtors," passed in the year 1774. If he obtained the full benefit and the relief of that act, then by operation of law, all his real and personal estate, either in possession, remainder or reversion, became vested in the sheriff of *Baltimore* county, who is directed, first giving twenty days notice by advertisement set up at the court-house door and other public places of the county where the land lies, to sell the same at public sale for the best price.

By the act of 1774, *ch.* 24, if any person committed or charged in execution, or for the want of special bail, at any time after he shall have actually remained in prison, by the space of twenty days, on such commitment or charge, shall petition any three justices of the peace of the coun-

ty wherein such prisoner shall be detained, for his discharge, the justices shall thereupon appoint a time for their meeting, not less than thirty nor more than forty days, at the court-house, or gaol, and shall certify in writing to the sheriff, who shall, twenty days at the least before the appointed time, affix one copy of the certificate at the door of the county clerk's office, and another at the prison door of the county; at which day so to be appointed, the justices, or two of them, as well as the sheriff, are to attend at the court-house or prison, and the sheriff shall produce the body of such prisoner before the justices who shall attend, and shall make known to the justices the cause or causes of the imprisonment, and the time he hath been actually imprisoned under such commitment; and if it shall appear that such prisoner hath been actually imprisoned as before mentioned, and it doth not appear from the cause or causes of imprisonment, or by the allegations upon oath, of the creditors, or some of them, that the whole debts amount to £200 sterling, then such prisoner may deliver to the sheriff a schedule of his whole estate, debts and credits, which schedule shall be subscribed by the prisoner before the justices, who shall also subscribe the same as witnesses, and at the request of the prisoner the justices shall administer to him the oath prescribed by the act.

By the 4th section of the same law it is provided, that no person shall obtain its benefit unless the petition is exhibited within sixty days after the commitment.

The land in question was sold by the sheriff of *Baltimore* county to the lessor of the plaintiff, and the right of the plaintiff below to recover, depends on the question, whether the title of *Peter Kiesler* passed, in virtue of the proceedings on his petition, to the lessor of the plaintiff, through the sheriff.

It appears, that on the 1st of August 1808, the application by petition was made to three of the justices of the peace of *Baltimore* county, who appointed the 1st day of September following for the meeting; that they certified in writing to the sheriff the application so made to them, and directed him to produce the body of the prisoner, to give due notice according to law to the creditors to appear and shew cause, (if any,) why he should not be liberated; and on the first of September, the justices and sheriff met, when the person of *Kiesler* was produced; the sheriff

proved to them that he did set up the notices at the places mentioned in the act, on the 10th of August last, being twenty days and upwards previous to his discharge, and at the same time made known to the justices the cause of the imprisonment, and that he had actually been imprisoned for the space of 52 days; and it appearing to them, from the cause of the imprisonment, that his whole debts did not amount to the sum of £200 sterling, or the value thereof, and the petitioner having delivered to the sheriff a schedule in conformity to the provisions of the above mentioned act, they administered an oath to him, and then gave him his discharge.

At the time of the petition, as disclosed by the certificate of the justices, *Kiesler* had actually remained in prison for twenty days and upwards, *in virtue of a writ at the suit of George Hass*, for £37 10 0 debt, and 34 shillings and 10 pence costs, and for officers fees. There was no other evidence produced to the court of the facts above set forth, except the proceedings themselves as returned to and deposited in *Baltimore* county court office.

Various objections have been made to those proceedings as being defective previous to the time appointed for the meeting of the justices, and as defective afterwards on account of the oath which was administered; and it has also been urged, that the sale and the conveyance did not transfer the land in dispute in this cause.

In the first place it was contended, that evidence *aliunde* ought to have been produced to prove that the statement of facts, as set forth in the proceedings, even admitting that that statement in every respect *corresponded* with the act of assembly, was correct. But this objection, as it is most unquestionably unfounded, was relinquished. If it could be sustained, then it must follow, that every person claiming property sold under the act of 1774, must secure and preserve, (if it was practicable, as most evidently it is not,) extrinsic proof, to establish the facts set forth by the officers selected to carry the law into execution.

But waiving this objection, it is said, that it doth not appear that the petitioner had been in confinement under the claim of the debt, and for the officers fees, for the time specified in the act, for although the sheriff made it known to the justices that he had been imprisoned 52 days, yet as no words are inserted, that he had *not* been there more

JUNE 1821. *than* 60 *days*, and as a confinement for the latter period
would exclude him from the provisions of the act, it is
contended the proceedings are void.

It is stated that he had been, at the time of the applica-
tion, in confinement for the term of twenty days and up-
wards, and on the first of September, (the day of meeting,)
he is represented as then having been confined fifty-two
days, it does not necessarily follow that he might not have
been there longer than that space of time; but as it was the
duty of the sheriff, from whom alone information of the
fact was to be obtained, to disclose the whole truth, the
court must infer, and no other fair inference can be drawn,
that he had not been confined more than the fifty-two
days; and as he is set forth to have been in confinement
under the *two* claims on him, without specifying how long
under the one, and how long under the other, the correct
conclusion is, that the confinement was under both, for
the period stated.   It is said that it does not negatively
appear that his debts did not exceed £200 sterling, but it
affirmatively appears, that the claims under which he was
imprisoned are under that sum, and as no allegations ap-
pear to have been made on the part of his creditors, on
oath, setting forth the debts due from him exceeded that
sum, the maxim *de non apparentibus et non existentibus
eadem est ratio*, must apply.

As then the proceedings, under which the discharge
took place, were regular previous to the oath being admi-
nistered, will the oath that was taken vitiate the discharge,
and divest the property out of the officer, in whom the law
designed to deposit it for the interest of the respective
parties?

The objection principally relied on is, that the word
"or" as contained in the form of the oath before the words
"or to secure the same to receive or expect any profit or
advantage thereof," has been omitted, and it is contended
that such omission renders the oath administered, and the
one required by the act in question, substantially different.
The prisoner, it has been insisted, might, consistently with
the oath he took, have secured his property *to others to de-
fraud* his creditors, provided he himself did not thereby
receive, or expect to receive, any profit or advantage.

If the meaning of the oath, as administered, rested on
the omission of the word "or" before the words following

it, then the objection would be sustained; but when the whole
of the oath, as administered, is taken together, it appears im-
proper to conclude that such conveyances or dispositions of
his property could, without violating his oath, have been
made, for as in the preceding part he swears that he has
not "directly or indirectly sold, lessened, or otherwise con-
veyed, disposed of or intrusted, all or any part of his
estate, thereby to defraud his creditors," how could con-
veyances of property, consistently with that part of the
oath, have been fraudulently executed either for his own or
any other person's benefit?

But the omission of the word "or" in the place where it has
been omitted in the case before us, does not change the mean-
ing of the oath, on taking the context of the act of 1774 into
view, as it will be perceived that the omission of this word
does not materially vary the oath it prescribes, and the obliga-
tion is perfect without it; with the word inserted, the oath is,
that conveyances have not been made to defraud creditors
for his own or any other person's benefit; without it, that
the insolvent "had not sold, conveyed, &c. to secure the
same, to receive or expect any profit or advantage."

If then the proceedings are regular to the time of the
discharge, has the property in question that passed to the
sheriff been transferred by him to the lessor of the plaintiff?

This is a contest on the part of a stranger who, without
disclosing any interest except being on the land in contest,
now calls in question the validity of these proceedings.
He objects to the sheriff's sale, because by the deed it is
not disclosed what was the notice given. The deed now
objected to is that of a public trustee, that is, one who is
selected by operation of law, and against whose conduct
none who were parties to the original proceedings make
any opposition.

To sustain this objection would render inadequate most
of the deeds by trustees under decrees in chancery, who
always have their course of proceeding pointed out; but,
whether it is pursued or not, never appears on the face of
the deeds they execute for the property sold by them.

Although the court have determined on the various ob-
jections that have been made to the proceedings in this
case, they do not wish it to be understood, that discharges
under the insolvent laws are liable to all the objections
that are usually relied on against proceedings of persons

limited by special authorities; it is sufficient to say, that the objections that have been taken to the proceedings given in evidence in this cause, are not sustained, and therefore the judgment of the court below, founded on their sufficiency, is affirmed.

JUDGMENT AFFIRMED.